IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| JOHN IRVINE, | Case No. 07 C 50250 |
| Plaintiff, | |
| vs. | Magistrate Judge |
| | P. Michael Mahoney |
| MICHAEL J. ASTRUE, | |
| Commissioner of Social Security, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

John Irvine ("Claimant") seeks an award of $9,102.50 in attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, claiming that the Commissioner's opposition to Claimant's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") was not substantially justified. For the reasons stated below, Claimant's motion is granted.

Claimant applied for DIB on February 22, 2005 and for SSI on May 23, 2005. Both claims were denied initially and upon reconsideration. The ALJ conducted a hearing into Claimant's application on January 24, 2007. She found that Claimant had the following severe impairments: learning disorder, depressive disorder, anti-social disorder, and alcohol abuse disorder. The ALJ issued a written opinion on March 26, 2007 denying Claimant benefits. She found that Claimant's RFC permitted him to do past relevant work. The Appeals Council denied Claimant's request for review on October 17, 2007, and the ALJ's decision became the final decision of the Commissioner.

On January 22, 2008, Claimant filed a complaint in the United States District Court for the Northern District of Illinois seeking judicial review of the Commissioner's decision. The court issued an opinion remanding the ALJ's denial of benefits on February 26, 2009. The court found that the ALJ failed to rationally articulate her reasons for ruling out listing 12.05, mental retardation.[1] The court also found that the ALJ failed to use a special technique analysis in assessing Claimant's RFC, and did not link substantial evidence in the record to her RFC

---

[1] Listing 12.05 states the following:

    Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

    The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

    A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

    OR

    B. A valid verbal, performance, or full scale IQ of 59 or less;

    OR

    C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

    OR

    D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, sec. 12.05.

determination. Claimant now moves for an award of attorney's fees under the EAJA.

The EAJA provides that the court may award attorney's fees if the following requirements are met: 1) Claimant is a prevailing party; 2) the position of the Commissioner was not substantially justified; 3) no special circumstances exist which would make an award unjust; and 4) a fee application is submitted within thirty days of the final judgment in the action. 28 U.S.C. § 2412(d)(1); *see also United States v. Hallmark Construction Co.*, 200 F.3d 1076, 1079 (7th Cir. 2000). If a Claimant qualifies for an award of fees, those fees must be "reasonable." 28 U.S.C. § 2412(b). Here, the Commissioner disputes whether the second prong is satisfied. He also argues that the fees requested are unreasonable.

The Commissioner's position is substantially justified if "it has a reasonable basis in fact and law, and if there is a reasonable connection between the facts and the legal theory." *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The "substantially justified" standard is different from the "substantial evidence" standard used by the court when reviewing an ALJ's decision. *Cummings v. Sullivan*, 950 F.2d 492, 498 (7th Cir. 1991). The Commissioner's position may have been substantially justified even when there was not substantial evidence in the record to support the ALJ's conclusion. *Id*. "The Commissioner bears the burden of proving that both his pre-litigation conduct, including the ALJ's decision itself, and his litigation position were substantially justified." *Steward*, 561 F.3d at 683.

In this case, the Commissioner has not met his burden of showing that his position was substantially justified. The ALJ found that Claimant did not satisfy the requirements of listing 12.05, mental retardation. She relied in large part on Dr. Peggau's diagnosis that Claimant had a

3

learning disability.  The ALJ also relied on evidence that Claimant had a high school education and could read, write, use the computer for internet, and play video games.  The ALJ also cited Dr. Dennison's reports that Claimant had "fair cognitive function" and was malingering.

The court held that the ALJ's Step Three determination was not based on substantial evidence in the record.  The court found that the ALJ erred in citing Dr. Peggau's diagnosis of "learning disability" to disqualify Claimant from listing 12.05, particularly because four doctors' reports in the record suggested that Claimant had significantly subaverage intellectual functioning, as required by the listing.  The court also took issue with the ALJ's reliance on Claimant's high school education, noting that Claimant attained his degree by way of a special education program for people with developmental disabilities after having failed three grades.  There was also evidence suggesting that Claimant's reading and writing skills were low, and that Claimant had difficulty using the computer.

The court also found that the ALJ erred in relying on Dr. Dennison's notation that Claimant had "fair cognitive function."  That notation was ambiguous and inconsistent with other remarks made in Dr. Dennison's notes.  Also, Claimant's malingering diagnosis was not supported by substantial evidence in the record, and reliance on that report was inconsistent with other portions of the ALJ's opinion.

The court ultimately determined that Claimant might meet the requirements for listing 12.05.  The ALJ did not properly analyze the evidence in the record.  The position that the ALJ took in her Step Three determination did not have a reasonable basis in fact and law, and she did not make a reasonable connection between the facts and the legal theory.  Thus, her position was not substantially justified.

4

The court also found that the ALJ's RFC determination was flawed because she failed to properly conduct an analysis using the special technique. She also did not logically link substantial evidence in the record to her RFC determination. Specifically, the ALJ erred when she gave no weight to a Dr. Dennison report because she did not cite any contradicting evidence. She also did not account for Dr. Dennison's status as a treating physician. The ALJ also failed to justify giving Dr. Peggau's 2005 psychological examination no weight. Because she failed to use the special technique and did not logically link substantial evidence in the record to her RFC determination, the ALJ Step Four finding did not have a reasonable connection between the facts and the legal theory. Like the ALJ's Step Three determination, the ALJ's Step Four determination was not substantially justified.

The Commissioner argues that the fees requested by Claimant are not reasonable. The reasonableness of fee requests under the EAJA is determined in the same manner as that described in *Hensely v. Eckerhart,* 461 U.S. 424 (1983). *INS v. Jean*, 496 U.S. 154 (1990). A court begins by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensely*, 461 U.S. at 433. Hours that are excessive, redundant, or otherwise unnecessary are not "reasonably expended" and should therefore be excluded from this calculation. *Id*. The district court should also consider other factors such as the degree of success obtained by the prevailing party's counsel, the novelty and difficulty of the questions presented, the skill required by the particular case, the customary fee, whether the fee is fixed or contingent, the experience of the attorneys, and awards in similar cases. *Id*. at 434 n.9 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). Upon weighing the above considerations, the district court should exercise its discretion in making an equitable

judgment without the constraints of any precise rule or formula. *Id*. at 436-37.

The EAJA provides a statutory cap of $125 per hour on attorney's fees. 28 U.S.C. § 2412(d)(2)(A). However, the statute allows rates in excess of $125 per hour where the court determines that an increase in the cost of living justifies a higher hourly rate. 28 U.S.C. § 2412(d)(2)(A)(ii).

In this case, Claimant adjusted the rate of attorneys' fees for an increased cost of living using the Consumer Price Index to $170 per hour. (Pl.'s Pet. ¶ 10.) There was also time billed by a law clerk with a juris doctorate, Ms. Blaz, at $125 per hour. (*Id*. ¶ 12.) Claimant's billing statement also shows time billed by a law student, who had completed one year of law school, and a paralegal, each at $100 per hour. (*Id*.)

The Commissioner argues that billing $100 per hour for the law student's time is unreasonable. The court disagrees. According to the *Illinois Paralegal Association, 2005 Survey of Salaries and Benefits* (Pl. Pet. Ex. E), paralegals with less than one year experience make between $75 and $100 per hour in Illinois. With one year of experience, the rates range from $75 to $165 for paralegals in Cook County. The court finds that the hourly rate of $100 per hour for the law student in this case, who had completed one year of law school, to draft the opening brief is a reasonable rate in Chicago.

The Commissioner also takes issue with Claimant's reliance on the Laffey Matrix, arguing that it applies only in cases in a which a fee-shifting statue permits the prevailing party to recover reasonable attorney's fees. The matrix does not apply where the hourly rate is limited by statute. The EAJA caps attorney's fees at $125 per hour, "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified

6

attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

In his petition, Claimant cites to the Laffey Matrix to justify Ms. Blaz's hourly rate of $125. This rate is below that of the attorneys, and higher than that of the law student. Claimant directs the court's attention to two orders. In *Whisenant v. Barnhart*, 06-C05322 (N.D. Ill. Oct. 14, 2008), Judge Manning determined that a reasonable hourly rate for Ms. Blaz's work during 2007 was $142. In *Dillon v. Astrue*, 07-C03652 (N.D. Ill. Oct. 24, 2008), Magistrate Judge Keys found that a rate of $125 per hour was a reasonable rate for Ms. Blaz to charge. In this case too, Ms. Blaz's experience and degree warrant a rate of $125 per hour. Regardless of whether the Laffey Matrix is a proper tool to determine reasonable rates in EAJA cases, the court finds Ms. Blaz's rate reasonable.

The Commissioner argues that the 50.3 hours spent on drafting the opening brief by the law student was excessive. The opening brief was 20 pages long. The issues presented were complex. An experienced attorney may have completed the brief in less time. Claimant concedes that Attorney Goldbloom may have been able to complete the brief in 35 hours. However, at $170 per hour, Attorney Goldbloom would have charged $5,950 to complete the brief in 35 hours, where the law student billed only $5,030 to complete the brief in 50.3 hours. By using a law student, albeit slower, the law firm saved expenses. The court finds the number of hours spent by the law student on the brief reasonable.

Finally, the Commissioner argues that the 15.9 hours logged by Ms. Blaz and the 7.75 hours logged by Attorney Daley are excessive given their expertise in the field.[2] The Commissioner does not cite any specific line on the billing statement as unreasonable. The court

---

[2]Ms. Blaz logged one hour preparing the EAJA petition, giving her 16.9 hours total.

has reviewed the billing statement and finds the hours spent by Ms. Blaz and Attorney Daley reasonable.

Claimant seeks payment for 11 attorneys' hours at $170 per hour ($1,870), 16.9 hours for Ms. Blaz at $125 per hour ($2,112.50), and 51.2 law clerk and paralegal hours at $100 per hour ($5,120) for a total of $9,102.50. The court finds this amount reasonable and grants Claimant's motion for attorneys' fees under the EAJA.

**E N T E R:**

_____
**P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**

**DATE**: August 25, 2009